# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

HAYES LEMMERZ             :
INTERNATIONAL-GEORGIA,    :
INC.,                     :
                          :
       Plaintiff,        :    CIVIL ACTION NO.
                          :    2:09-CV-0021-RWS
    v.                :
                          :
PUNCH PROPERTY            :
INTERNATIONAL NV,         :
                          :
       Defendant.

## ORDER

    This case comes before the Court on Defendant's Motion for Judgment on the Pleadings, or, in the Alternative, to Stay Proceedings [13].  After considering the record, the Court enters the following order.

## Background

    The present action arises from a contract dispute between Hayes Lemmerz International-Georgia, Inc. ("HLIG"), and Punch Property International NV ("Punch Property").  (Complaint Dkt. No. [1] at ¶ 5).  The contract at issue concerns the sale of an automotive wheel manufacturing plant ("Property") located in Gainesville, Georgia.  (Complaint at ¶ 1).  On June 13,

2008, HLIG agreed to sell the Property to Punch Property for $5,000,000. (Complaint at ¶ 2; see Agreement of Purchase and Sale between HLIG and Punch Property ("Property Agreement"), Complaint, Ex. 1, Dkt. No. [1-2]). That same day Punch Property made a $1,000,000 earnest money payment to HLIG. (Complaint at ¶ 2).

The sale of the Property from HLIG to Punch Property was part of a broader effort by Punch International NV ("Punch International" (parent company of Punch Property)) to acquire part of Hayes Lemmerz International, Inc.'s ("HL International" (parent company of HLIG)) automotive wheel business. (Memorandum of Law in Support of Defendant's Motion ("Def.'s Memo") Dkt. No. [13-2] at 2). On the same day that the Property Agreement was executed, Hayes Lemmerz SRL ("HL Italy"), Hayes Lemmerz Belgium BVBA ("HL Belgium") and BBS International GmbH ("BBS International" (subsidiary of Punch International)) entered in the Share Sale and Purchase Agreement ("Share Agreement") to allow Punch International to acquire 100 percent of the shares of HL Belgium. (Share Agreement, Def's Memo, Ex. A, Dkt. No. [13-3] at 1, ¶ 2.1). Also on June 13, 2008, Punch International, HL Italy, HLIG and Hayes Lemmerz Holding GmbH ("HL Holding") entered into a

2

Parent Guarantee related to the Property Agreement and Share Agreement, as well as other agreements. (Parent Guarantee, Def's Memo, Ex. C, Dkt. No. [13-4] at 1). The Property Agreement, Share Agreement, and Parent Guarantee were all executed in Brussels, Belgium by Steven Esau (acting on behalf of HLIG, HL Italy, HL Belgium, and HL Holding) and Guido Dumarey (acting on behalf of Punch Property, Punch International, and BBS International). (Property Agreement at 16; Share Agreement at 16; Parent Guarantee at 2).

On October 31, 2008, HL Italy, HLIG, Equipment Development Solutions BVBA (formerly HL Belgium), BBS International, Punch Property, and Punch International entered into an Agreement to Resolve Actual Working Capital and to Amend Share Purchase and Sale Agreement and Other Related Agreements ("Amendment"). (Amendment, Complaint, Ex. 2, Dkt. No. [1-3]). The Amendment makes changes to the Property Agreement, as well as other agreements between the aforementioned entities. In regards to the contract between HLIG and Punch Property, the Amendment alters the Property Agreement as follows:

5.    Additional Georgia Assets

5.1    [HLIG] hereby agrees to sell to Punch Property
       . . . one Stryko furnace . . . which will be left in
       place at the property in Gainesville, Georgia
       that is the subject of the Georgia Property
       Agreement.

5.2    The purchase price of the Stryko Furnace shall
       be [$150,000] . . . .

5.3    The purchase of the Stryko Furnace shall be on
       the terms and conditions of the Georgia
       Property Agreement. [HLIG] and Punch
       Property agree that the Georgia Property
       Agreement is hereby amended as follows:

       (A)    The amount of the "Purchase Price" as
              defined therein is increased to
              [$5,150,000];

       (B)    The Stryko Furnace shall be included in
              the "Paint Line Facilities" as defined
              therein.

On January 23, 2009, HLIG notified Punch Property that it had ceased

business operations at the Property and requested that the closing take place on

January 30, 2009.[1]  (Complaint at ¶ 4).  However, the closing never occurred.

---

[1] The Property Agreement states that the closing "shall take place on the date
which is the earlier of : (i) five (5) days after Seller gives Purchaser written notice that
Seller has ceased its business operations on the Property, or (ii) June 30, 2009."
(Property Agreement at ¶ 4.1).

AO 72A
(Rev.8/82)

(Id. at ¶¶ 4-5, 20-26).  As a result, HLIG brought this action on February 9,

2009, seeking specific performance of the Property Agreement.

On January 31, 2009, before HLIG filed the present action, counsel for

Punch Property and Punch International sent letters to HL International, HLIG,

and HL Italy setting forth the basis for claims arising out of the Share

Agreement and Property Agreement.  (See Def.'s Memo, Ex. E, Dkt. No. [13-

7]).  The letters assert that the Share Agreement and Property Agreement were

entered into in bad faith and constitute fraud.  (Id. at 7-8[2]).  The letter to HLIG

states

> The negotiations between Punch International and
> Hayes Lemmerz International formed the framework
> of all agreements.  The given perspective was
> calculated in the price Punch International was willing
> to pay for the shares and for the real estate.
> . . .
> The price of the real estate is no longer accepted.  The
> price was calculated based upon the scope and the
> nature of all transactions between Punch International
> and Hayes Lemmerz International.
> . . .
> At least the closing of this agreement needs to be
> suspended until the final decision about the

---

[2] Exhibit E [13-7] to Defendant's Memorandum [13-2] is unnumbered.  The page numbers cited represent the seventh and eighth page of the exhibit inclusive of the cover page.  Further cites to Exhibit E [13-7] follow the same format.

5

> obligations of Hayes Lemmerz International [are determined].

(Id. at 8-9).  The letter goes on to say that, "[i]n the absence of a constructive response within a period of 8 days our clients will start a court procedure."  (Id. at 9).  Nine days after the mailing of this letter from Defendant's counsel, Plaintiff filed the present action.  Defendant also subsequently filed an action.  On March 27, 2009, the commercial court in Antwerp, Belgium issued a summons and complaint by Punch International and Punch Property against HL International, HLIG and HL Italy.  (Def.'s Memo at 7; See Summons and Complaint, Def.'s Memo, Ex. G, Dkt. No. [13-9]).  In that action, Punch Property and Punch International seek to rescind the Property Agreement and obtain monetary damages.  (Id.).  The present action in the Northern District of Georgia exists against this backdrop.

The subject of the present motion in this action is whether HLIG brought this suit in the appropriate forum, and even if this is the appropriate forum, whether this Court should stay the case in light of related proceedings currently pending in Belgium.

6

The Property Agreement as executed on June 13, 2008, contained a choice-of-law clause, but no forum selection clause.  The Property Agreement states that it "shall be governed by, and construed in accordance with, the laws of the State of Georgia."  (Property Agreement at ¶ 7.5).  In contrast, the Share Agreement states:

> 20.   Governing Law and Jurisdiction
>
> 20.1   This Agreement shall be exclusively governed by Belgian law.
>
> 20.2   All disputes arising out of or in connection with this Agreement or further agreements resulting thereof, shall be submitted to the exclusive jurisdiction of the competent courts of Antwerp.

This language is not relevant because of its inclusion in the Share Agreement itself, but rather because the Amendment states that "[c]lauses 13 through 20 . . . of the [Share Agreement] apply to this Agreement and are considered to be repeated and included herein."  (Amendment at ¶ 7.1).  The Court now addresses the question of whether clause 20 of the Share Agreement is incorporated into the Property Agreement as a result of the Amendment, thus supplanting the Georgia choice-of-law provision and establishing Antwerp,

7

Belgium as the only forum in which a suit on the contract between HLIG and Punch Property may be brought.

## Discussion

### I.     Venue

While Defendant's Motion [13] is styled as one for a judgment on the pleadings, it is actually a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), because the question presented is whether a forum-selection clause renders this forum improper.  Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir. 1998) ("[W]e hold that motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Fed. R. Civ. P. 12(b)(3) as motions to dismiss for improper venue.").  It should be noted that Plaintiff does not dispute the enforceability of the foreign forum selection clause contained in the Amendment, but only whether that clause applies to the Property Agreement.  In making this determination and assessing Defendant's motion to dismiss for improper venue, this Court must view the facts in a light most favorable to the Plaintiff.  Ambraco, Inc. v. Bossclip B.V., 570 F.3d 233,

8

237-238 (5th Cir. 2009) (citing <u>Murphy v. Schneider Nat'l Inc.</u>, 362 F.3d 1133, 1138-1140 (9th Cir. 2004)).

A.    <u>Waiver of Improper Venue Defense</u>

Plaintiff contends that Defendant waived the defense of improper venue when it admitted in its Answer [10] that venue is proper in this Court. (Answer, Dkt. No. [10] at ¶ 9).  Defendant's Answer was filed on March 30, 2009.  On April 6, 2009, Defendant filed an Amended Answer [12] in which it denied that venue is proper in this Court.  (Amended Answer, Dkt. No. [12] at ¶ 9). Because Defendant amended its Answer "as a matter of course" under Fed. R. Civ. P. 15(a)(1) and denied that venue is proper, it has not waived the defense of improper venue.  <u>See</u> Fed. R. Civ. P. 12(h)(1)(B)(ii) (improper venue defense is not waived if included in an amended pleading allowed as a matter of course); <u>Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.</u>, 364 F.3d 884, 887 (7th Cir. 2004) (same).

B.    <u>Forum Selection Clause</u>

Defendant argues that the Belgian forum selection clause, incorporated into the Amendment from the Share Agreement, governs the present dispute

over the Property Agreement.[3]  (Def.'s Memo at 9-13).  Defendant reasons that

HLIG was a party to the Amendment, the Amendment applies to the Property

Agreement, and thus the forum selection clause included in the Amendment

also applies to the Property Agreement.  Specifically, the forum selection clause

incorporated into the Amendment states, "[a]ll disputes arising out of or in

connection with" the Amendment, shall be brought in Belgium.  (Amendment at

¶ 7.1 (incorporating Share Agreement ¶ 20.2)).  Defendant argues that because

Plaintiff's suit seeks recovery for the contract as amended to include the Stryko

furnace and for the amended purchase price of $5,150,000, that the dispute

arises "out of or in connection with" the Amendment, and thus the only

---

[3] The forum selection clause of the Share Agreement does not, in and of itself, apply to the Property Agreement.  The argument that it does is based on the language of the clause which states, "All disputes arising out of or in connection with this Agreement or further agreements resulting thereof," shall be brought in Belgium. (Share Agreement at ¶ 20.2).  As evidenced by letters from Defendant's counsel to HLIG, HL International, and HL Italy, the Property Agreement was part of a broader undertaking by parent companies HL International and Punch International and was executed in connection with the Share Agreement and other agreements.  (Def.'s Memo, Ex. E, at 8-9).  However, the Property Agreement states that it is the entire agreement (at ¶ 7.3), that it is not for the benefit of third parties (at ¶ 7.17), and that any modification must be signed by the party against whom the enforcement of the modification is sought (at ¶ 7.4).  HLIG was not a signatory to the Share Agreement and thus the forum selection clause in that agreement does not apply to the Property Agreement.  If the Belgian forum selection clause is to apply to the Property Agreement, it is only because of its inclusion in the Amendment, not from its inclusion in the Share Agreement.

AO 72A
(Rev.8/82)

appropriate forum for the suit is in Belgium.  However, this line of reasoning is not persuasive when the Amendment and Property Agreement are considered as a whole, particularly in light of the portion of the Amendment that deals directly with the Property Agreement.

As an initial matter, the Property Agreement concerns real property in Georgia and is to be performed in Georgia and therefore is to be construed and governed in accordance with Georgia law.  Amstell, Inc. v. Bunge Corp., 213 Ga. App. 115, 116, 443 S.E. 2d 706, 707 (Ga. Ct. App. 1994) (stating that substantive law of state where contract is to be performed will apply).  The cardinal rule of contract construction in Georgia is to ascertain the intent of the parties.  O.C.G.A. § 13-2-3.  In order to ascertain the intent of the parties the contract must be viewed as a whole and specific provisions will prevail over provisions that are more broadly inclusive.  Museum Tower Condo. Ass'n, Inc. v. Children's Museum of Atlanta, Inc., 297 Ga. App. 84, 87, 676 S.E.2d 448, 450 (Ga. Ct. App. 2009).

The section of the Amendment specifically addressing the Property Agreement prevails over a clause applying to the Amendment generally.  The Amendment states that the sale of the additional piece of equipment "shall be

11

on the terms and conditions of the Georgia Property Agreement." (Amendment at ¶ 5.3). Furthermore, the Amendment specifically enumerates the changes to the Property Agreement, and it lists only two: (1) a furnace is included in the sale of the Property; and (2) the purchase price is changed to $5,150,000 to account for the inclusion of the furnace. (Id. at ¶¶ 5.3(A), 5.3(B)). If the parties intended for clause 20.2 of the Share Agreement to apply to the Property Agreement by way of the Amendment, they could have more clearly said so. Instead, the parties agreed that the addition of the furnace was to occur on the terms and conditions of the Property Agreement. (Id. at ¶¶ 5.3). The Property Agreement does not contain a forum selection clause dictating that Belgium is the only appropriate forum. Therefore, this Court is an appropriate forum for this dispute arising out of the Property Agreement.

The Court recognizes that clause 20.2 states that "[a]ll disputes arising out of or in connection with" the Amendment shall be brought in Belgium. The Court is also cognizant that Plaintiff in its Complaint [1] seeks specific performance of the Property Agreement as amended to increase the purchase price from $5,000,000 to $5,150,000. (Complaint at ¶¶ 2, 32). Therefore, Defendant argues that the current dispute arises in connection with the

Amendment and should be brought in Belgium. However, such an argument is premised on the application of clause 20.2 to the Property Agreement. As noted above, the specific provisions of the Amendment targeting the Property Agreement indicate that it was the intent of the parties to amend the Property Agreement in a limited fashion and that the amendment was to occur "on the terms and conditions of the Georgia Property Agreement." (Amendment at ¶ 5.3). Since the Property Agreement lacks a forum selection clause and because venue is otherwise proper in this Court, the action will not be dismissed on the basis of venue.

The same reasoning is applicable to the choice-of-law clause (¶ 20.1) incorporated into the Amendment from the Share Agreement. It does not apply to the Property Agreement and does not supplant the existing choice-of-law clause in the Property Agreement which selects Georgia law as the governing law.

## II.    Stay

Although this forum is a proper venue for the dispute over the Property Agreement, the Court must nevertheless determine whether the current action should be stayed in light of the related proceedings currently pending in

Belgium. The Eleventh Circuit has determined that in some international

disputes, the prudent decision is for the federal court to abstain from the

exercise of jurisdiction. Tuner Entm't Co. v. Degeto Film GmbH, 25 F.3d

1512, 1518 (11th Cir. 1994). This Court has broad discretion to stay

proceedings. Clinton v. Jones, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed.

2d 945 (1997). The Court must consider three goals in exercising that

discretion in a case such as this where parallel proceedings are pending in a

foreign court: "(1) a proper level of respect for the acts of our fellow sovereign

nations [(international comity)]; (2) fairness to litigants; and (3) efficient use of

scarce judicial resources." Posner v. Essex Ins. Co., 178 F.3d 1209, 1223 (11th

Cir. 1999) (quoting Tuner Entm't Co., 25 F.3d at 1518)).

    A.    International Comity

    Federal courts regularly permit parallel proceedings in an American court

and a foreign court, particularly where the foreign court has not already reached

a judgment on the merits. Turner Entm't Co., 25 F.3d at 1521. The Belgian

court, as far as this Court has been made aware, has not reached a judgment on

the merits of the dispute concerning the Property Agreement. However, this in

an of itself does not mean that it is inappropriate for this Court to stay the

14

present proceedings. The Court must still examine the goals set forth by the Eleventh Circuit in determining whether to exercise its discretion to stay the present proceedings in this Court.

If the Belgian court had already rendered a judgment on the merits, there would be a much greater concern of disparaging international comity by allowing the present suit to continue. Id. (stating that "failure to defer to the judgment would have serious implications for the concerns of international comity"). That is not the case here. The Court must also consider other international comity concerns including:

> (1) whether the judgment was rendered via fraud; (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and (3) whether the foreign judgment is prejudicial, in the sense of violating American public policy because it is repugnant to fundamental principles of what is decent and just.

Id. at 1519 (internal citations omitted). Belgium has competent courts that use proceedings consistent with civilized jurisprudence. Ingersoll Milling Mach. Co. v. Granger, 833 F.2d 680, 687-88 (finding that procedures afforded plaintiff by Belgian judicial system were fundamentally fair). Further, there is no indication that any judgment entered by a Belgian court would be infected by

15

fraud. Finally, there is also nothing to suggest that a decision rendered by a Belgian court in regards to this business dispute would violate American public policy.

While this action could be allowed to continue in a parallel fashion to the Belgian proceeding, there is nothing to indicate that the Belgian court would not do an adequate job resolving the dispute itself, such that this action must be allowed to continue for the Plaintiff to receive sufficient relief.

B.    Fairness to Litigants

The Eleventh Circuit considers three factors in evaluating fairness to the parties: (1) the order in which the suits were filed; (2) the most convenient forum; and (3) the risk of prejudice resulting from abstention. Turner Entm't Co., 25 F.3d at 1522. The present action was filed on February 9, 2009 and the Belgian summons and complaint were issued on March 27, 2009. While the action in this Court was filed first, that fact alone is not dispositive. Lockheed Martin Corp. v. L-3 Commc'ns Corp., 405 F. Supp. 2d 1381, 1383 ("first-filed rule should not be mechanically applied"). The fact that Plaintiff filed this action first is less compelling in light of the facts surrounding the commencement of this action. Defendant's counsel notified Plaintiff on

16

January 31, 2009 that it intended to file an action against Plaintiff if a

satisfactory response to Defendant's concerns was not received from Plaintiff

within eight days. (Def.'s Memo, Ex. E, at 9). Therefore, the fact that Plaintiff

filed this action first should not tip the scales since it was put on notice by

Defendant that an action against it was imminent. <u>Centennial Life Ins. Co. v.

Poston</u>, 88 F.3d 255, 258 (4th Cir. 1996) (declining "to place undue

significance on the race to the courthouse door, particularly . . . where [plaintiff]

had constructive notice of [defendant's] intent to sue").

The Court must also examine the convenience of the two forums at issue

- the Northern District of Georgia and Antwerp, Belgium. The fact that Georgia

law governs the dispute between the parties, weighs in favor of the convenience

of this Court. The Belgian court in which the dispute over the Property

Agreement is being litigated should apply Georgia law to the contract.

(Property Agreement at ¶ 7.5 (Georgia choice-of-law provision)). The presence

of the Property in this judicial district also weighs in favor of this forum,

however, it does not necessitate that the suit be brought in this forum as

Plaintiff argues. Plaintiff contends that no matter where the judgment is

rendered it will have to be enforced in Georgia. (Plaintiff's Response in

Opposition to Defendant's Motion ("Pl.'s Response") Dkt. No. [22] at 23).

However, this is not the case. In this case, Plaintiff is the seller of the Property

and is seeking specific performance - the payment of the remainder of the sale's

price plus additional costs and damages. Such an award in favor of Plaintiff

could be enforced against Defendant in Belgium where Defendant is located,

and does not need to be domesticated in Georgia. Additionally, neither Plaintiff

nor Defendant are Georgia corporations or have their principal place of business

in this state.[4]

Perhaps most compelling in regards to the convenience of the two forums

is the fact that the present dispute between Plaintiff and Defendant is only one

piece of a broader dispute, the totality of which is before a Belgian court. The

Plaintiff has already received a summons and complaint from a Belgian court

and will have to defend the case there regardless of what this Court decides to

do. Furthermore, the Property Agreement as well as the related agreements

were executed in Belgium. (Property Agreement at 16; Share Agreement at 16;

Parent Guarantee at 2). The counterclaims by Punch Property involve allegedly

---

[4] HLIG is a Delaware corporation with its principal place of business in Michigan. (Complaint at ¶ 6). Punch Property is a Belgian corporation with its principal place of business in Belgium. (Complaint at ¶ 7).

fraudulent representations made by HL International, that were allegedly ratified by HLIG. The evidence concerning the negotiation of the Property Agreement as well as the related agreements is more likely to be found in Belgium and in Europe where other involved entities are located, rather than in Georgia. The likely presence of the evidence in Europe weighs in favor of Belgium as a forum.

The final factor to be considered in assessing the fairness to the litigants is whether either party will be prejudiced if this Court stays the present action. There is no reason to believe that Plaintiff would be prejudiced if its claims are litigated in Belgium. Given the procedural safeguards and respect for due process present in Belgian courts, there is no reason to believe that such a court will be prejudiced against Plaintiff. See Ingersoll Milling Mach. Co., 833 F.2d at 687-88 (stating that Belgian judicial proceedings are fundamentally fair).

C.    Efficient use of Judicial Resources

As previously noted, the dispute before this Court is only one piece of a broader dispute between Plaintiff, Defendant, and other entities related to both. The Property Agreement was one part of an effort by Punch International to obtain a portion of HL International's automotive wheel business. Both the

19

Plaintiff and Defendant are parties to the Belgian proceedings and the issues presented in that action overlap with the issues in this action. This Court is certainly capable of resolving the present dispute. Doing so, however, only addresses one portion of a broader dispute. In contrast, the Belgian courts have the advantage of examining the entire dispute and the ability to resolve the dispute over the Property Agreement as well as other related agreements. For this reason, efficiency concerns weigh heavily in favor of a stay.

After carefully examining the interplay of the three goals that this Court is to pursue in determining whether to stay an action in favor of a proceeding in a foreign jurisdiction, the Court will grant Defendant's request to stay the action in this Court. Belgian courts utilize proceedings consistent with civilized jurisprudence and there is no indication that any decision rendered by a Belgian court would be rendered via fraud or violate American public policy. The fact that the present action was filed before the action in Belgium is not persuasive in light of the circumstances surrounding the filing of this action. While the Property is located in Georgia and the agreement is governed by Georgia law, Defendant is a Belgian corporation, Plaintiff is already before the Belgian court, and the evidence concerning the negotiation of the Property Agreement is more

likely to be in Belgium where the agreement was executed. Thus, Belgium is a convenient forum to litigate the dispute.

While concern for international comity and fairness to litigants would otherwise render this a close decision, consideration of judicial efficiency clearly weighs in favor of a stay. The Belgian court not only has the benefit of viewing the dispute in its proper context as part of a broader transaction, it also has the ability to resolve the entire dispute, as opposed to this Court's ability to only resolve one portion of it. Therefore the present action is stayed.

## Conclusion

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings, or, in the Alternative, to Stay Proceedings [13] is **DENIED IN PART** and **GRANTED IN PART**. Defendant's request for judgment on the pleadings is **DENIED**. Defendant's request for a stay is **GRANTED**. This action is **STAYED** pending the final resolution of the action in the Commercial Court in Antwerp, Belgium involving the dispute between Plaintiff and Defendant over the Property Agreement.

AO 72A
(Rev.8/82)

**SO ORDERED**, this  25th  day of January, 2010.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)