IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| HAYES LEMMERZ INTERNATIONAL-GEORGIA, INC., | : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 2:09-CV-00021-RWS |
| v. | : : | |
| PUNCH PROPERTY INTERNATIONAL NV, | : : | |
| Defendant. | | |

## **ORDER**

This case comes before the Court on Plaintiff's Motion for Sanctions [96] and Motion for Summary Judgment [103].  After reviewing the record, the Court enters the following Order.

### **Background**

Plaintiff Hayes Lemmerz International-Georgia, Inc. ("HLIG" or "Plaintiff") initiated this litigation by filing a Complaint seeking specific performance and damages for breach of contract against Defendant Punch Property International NV ("Punch Property" or "Defendant"), alleging that Punch Property breached an agreement to purchase certain real property and

equipment from HLIG.  (See generally Compl., Dkt. [1].)  Punch Property counterclaimed for fraud and seeks rescission of the parties' agreement on that basis.  (Am. Answer and Counterclaims, Dkt. [12] ¶¶ 24-40.)  HLIG now moves for summary judgment on the claims raised in its Complaint and on Punch Property's counterclaims.  (See generally Dkt. [103].)  The facts are as follows.

Plaintiff HLIG is a subsidiary of Hayes Lemmerz International, Inc. ("HL International").  Defendant Punch Property is a subsidiary of Punch International NV ("Punch International").  As stated above, the claims raised in the Complaint pertain to an agreement between Plaintiff HLIG and Defendant Punch Property, according to which Punch Property agreed to buy and HLIG agreed to sell an automotive wheel manufacturing plant in Gainesville, Georgia (the "Property") (the "Property Agreement").  (Pl.'s Statement of Undisputed Material Facts ("Pl.'s SMF"), Dkt. [103-2] ¶¶ 1-3.)  The Property Agreement was executed on June 13, 2008 and was scheduled to close five (5) days after HLIG gave Punch Property notice that it had ceased operations on the Property, or on June 30, 2009, whichever date was earlier.  (Id. ¶¶ 2, 89.)  After Punch Property refused to close on the Property Agreement, HLIG sued, alleging

2

breach of contract and seeking specific performance.  (See generally Compl., Dkt. [1].)

Punch Property asserted a counterclaim for fraud and, on this basis, seeks equitable rescission of the Property Agreement.  (See generally Am. Answer and Counterclaims, Dkt. [12]; Def.'s Resp. to Pl.'s Mot. for Summ. J. ("Def.'s Resp."), Dkt. [112].)  Punch Property's fraud allegations do not relate directly to the Property Agreement but, rather, to a Share Sale and Purchase Agreement ("SPA"), which was executed on the same date as the Property Agreement by entities related to the parties.  In particular, the SPA was executed by Hayes Lemmerz Srl ("HL Italy"), another subsidiary of HL International, and BBS International GmbH ("BBS"), another subsidiary of Punch International.  (Pl.'s Mot. for Summ. J., Ex. 5 (SPA), Dkt. [103-5] at 1.)  Under the SPA, BBS agreed to buy from HL Italy shares of Hayes Lemmerz Belgie BVBA ("HL Belgium").  (Id.)

Punch Property contends that the Property Agreement and SPA were part of a single "comprehensive agreement."  (Am. Answer and Counterclaim, Dkt. [12] ¶¶ 6-7.)  Punch Property alleges that "Punch International sought to acquire the Property as part of its acquisition of HL Belgium[,]" and that

3

"Punch International, through Punch Property, would not have sought to acquire the Property unless Punch International also acquired HL Belgium." (Id. ¶¶ 9-10.)

The allegations of Punch Property's counterclaim for fraud pertain to the SPA and are as follows.  Punch Property alleges that "HL International represented to Punch International that HL Belgium had existing contracts and orders with Ford, Fiat, Volvo and Mercedes for the sale of automotive wheels" and that "the contracts and orders would continue for a minimum of five years." (Am. Answer and Counterclaim, Dkt. [12] ¶ 15.)  Punch Property further alleges that HL International, "and its subsidiary HLIG," knew the representations were false and that Punch International and its subsidiaries, BBS and Punch Property, would rely on the representations in entering into the SPA and Property Agreement.  (Id. ¶¶ 16-17.)  In particular, Punch Property alleges that the "fraudulent misrepresentations artificially inflated the value of the Property" and that Punch Property "would not have agreed to enter into the Property Agreement had it known the representations regarding the contracts and orders with Ford, Fiat, Volvo and Mercedes were false."  (Id. ¶ 21.)  Punch Property contends that it refused to close on the Property Agreement because of

4

its discovery of these misrepresentations. (Id. ¶ 22.) Punch Property seeks to rescind the Property Agreement on the basis of this alleged fraud. (Id. ¶ 40.)

HLIG moves for summary judgment on its claims for breach of contract and specific performance and on Punch Property's counterclaims for fraud and rescission. (Dkt. [103].) Punch Property opposes HLIG's motion. (Dkt. [112].) The Court sets out the legal standard governing a motion for summary judgment before considering HLIG's motion on its merits.[1]

## Discussion

**I.     Plaintiff's Motion for Summary Judgment [103]**

A.     Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1] The Court considers Plaintiff's Motion for Sanctions [96] after Plaintiff's Motion for Summary Judgment [103].

5

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

6

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

### B.   Analysis

The Court finds that HLIG is entitled to summary judgment on Punch Property's counterclaims for fraud and rescission and, therefore, on its own claims for breach of contract and specific performance. As stated in the Background section, supra, Punch Property argues that the SPA and the Property Agreement formed a single "comprehensive agreement," such that fraud committed in connection with the SPA entitles it to rescission of the Property Agreement. (Def.'s Resp., Dkt. [112] at 2-5.) This argument, however, fails. As explained below, if the two contracts are treated as a single agreement, Punch Property is not entitled to rescission of the Property Agreement because the benefits of the SPA have been retained.

7

Under Georgia law, "[a] party who was fraudulently induced by misrepresentations into entering into a contract may elect one of two actions: affirm the contract and sue to recover damages for its breach or rescind the contract and sue in tort . . . for fraud." GCA Strategic Inv. Fund, Ltd. v. Joseph Charles & Assocs., Inc., 537 S.E.2d 677, 680-81 (Ga. Ct. App. 2000). It is well-settled, however, that "in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value.'" Orion Capital Partners, L.P. v. Westinghouse Elec. Corp., 478 S.E.2d 382, 385 (Ga. Ct. App. 1996) (alterations in original) (quoting O.C.G.A. § 13-4-60). Thus in Orion, for example, a case involving a dispute arising out of an assert purchase agreement, the Georgia Court of Appeals found rescission unwarranted when the buyer did not restore or offer to restore to the seller the acquired business upon discovery of the alleged fraud:

> Examination of the record reveals uncontradicted evidence that following discovery of the alleged . . . misrepresentations, [the buyer] engaged in a series of management decisions . . . which can be construed only as an attempt to continue to operate [the acquired business] and to do so in a profitable manner. These actions are totally incompatible with contract rescission.

8

478 S.E.2d at 385.  Finally, "partial rescission of a contract cannot occur absent mutual assent of the parties."  GCA Strategic Inv. Fund, LLC, 537 S.E.2d at 681.

In this case, as in Orion, the evidence shows that the benefits obtained under the SPA never were restored to HL Italy but, rather, were retained by BBS.  Accordingly, if the two agreements are considered as one, as Punch Property urges, Punch Property is not entitled to rescind the Property Agreement when the value obtained as a result of the SPA has been retained.

If, on the other hand, the Property Agreement and SPA are not treated as a single, comprehensive agreement but, rather, as separate and distinct contracts, Punch Property's counterclaims likewise fail because Punch Property has not sued the proper party for fraud.  To prevail on a claim for fraud under Georgia law, a claimant ultimately must prove five essential elements:  "(1) *false representation made by the defendant*; (2) scienter, the intent to deceive; (3) intent to induce the plaintiff to act or refrain from acting in reliance upon the representation; (4) justifiable reliance by the plaintiff upon the representation; and (5) damages directly

and proximately caused by reliance." <u>Middleton v. Troy Young Realty, Inc.</u>, 572 S.E.2d 334, 336 (Ga. Ct. App. 2002) (emphasis added).  In this case, the alleged fraud concerns representations allegedly made by HL International, which is not a party to the Property Agreement or to this litigation, rather than Plaintiff/ Counterclaim-Defendant HLIG. Although Punch Property attempts to attribute the false representations to HLIG by alleging that they were made with HLIG's "full knowledge, consent and ratification," Punch Property has presented no evidence to support this allegation.  Accordingly, even if Punch Property could prove that HL International engaged in the alleged fraud, it has failed to produce any evidence that the fraud could be attributed to HLIG, which failure is fatal to Punch Property's counterclaims.

In accordance with the foregoing, HLIG is entitled to judgment as a matter of law on Punch Property's counterclaims for fraud and rescission and, therefore, on its claims for breach of contract and specific performance.  Plaintiff HLIG's Motion for Summary Judgment therefore is **GRANTED**.

10

**II.     Plaintiff's Motion for Sanctions [96]**

Plaintiff HLIG's Motion for Sanctions [96] is based on Defendant Punch Property's filing of an allegedly untruthful declaration, upon which it relied in support of its Motion for Leave to File a Second Amended Answer and Counterclaim ("Motion for Leave to Amend") (Dkt. [83]).  HLIG requests the following relief: that the Court (1) strike the false portions of the declaration, (2) deny the Motion for Leave to Amend, and (3) award HLIG the costs and fees incurred in conducting additional discovery and responding to Punch Property's briefs regarding the proposed amendment.  (Pl.'s Mem. of Law in Supp. of its Mot. for Sanctions, Dkt. [96-1] at 14-15.)

By Order dated March 9, 2012, the Court denied Punch Property's Motion for Leave to File Second Amended Answer and Counterclaim. (Dkt. [95].)  Accordingly, the Court has granted HLIG part of the relief it currently seeks.  In light of this fact, and outstanding factual issues regarding the truth or falsity of the statements made in the accused declaration, the Court **DENIES** Plaintiff HLIG's Motion for Sanctions.

11

## Conclusion

In accordance with the foregoing, Plaintiff HLIG's Motion for Sanctions [96] is **DENIED**. Plaintiff HLIG's Motion for Summary Judgment [103] is **GRANTED**. In light of the rulings herein, it appears Plaintiff is entitled to judgment. The Court will schedule a conference with counsel to consider what relief should be granted pursuant to this Order.

**SO ORDERED**, this  11th  day of October, 2012.

_____
RICHARD W. STORY
United States District Judge

AO 72A
(Rev.8/82)