## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| HAYES LEMMERZ INTERNATIONAL-GEORGIA, INC., ) ) ) | |
| Plaintiff, ) ) | CIVIL ACTION NO. 2:09-CV-00021-RWS |
| v. ) ) | |
| PUNCH PROPERTY INTERNATIONAL NV, ) ) ) | |
| Defendant. ) ) | |

### PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Hayes Lemmerz International-Georgia, Inc. ("Plaintiff") hereby submits its Proposed Findings of Fact and Conclusions of Law.

**I.     Findings of Fact.**

1.     Hayes Lemmerz International-Georgia, Inc. is a part of the Hayes Lemmerz companies, the largest global original equipment automotive wheel manufacturer.

2.     Plaintiff owned and operated a cast aluminum automotive wheel manufacturing facility at 1215 Palmour Drive, Gainesville, Georgia (the "Gainesville Plant").

3. On June 13, 2008, Plaintiff entered into an Agreement of Purchase and Sale with Punch Property International NV (the "Property Agreement") for the sale of the Gainesville Plant and equipment located in the plant.

4. The Property Agreement described the real property to be sold as approximately 18.365 acres of land located at 1215 Palmour Drive, and the building, parking area, and related facilities situated on the land. The metes and bounds description of the land was set forth in Exhibit A to the Property Agreement.

5. The Property Agreement described the personal property to be sold as trade fixtures and equipment including the paint line, the Moco heat treatment installation, the conveyors and the pre-load station that feed the paint line.

6. The personal property was more specifically described in Exhibit B to the Property Agreement, and includes an Eisenmann paint line, MOCO heat treatment equipment, Stryko furnace, waste water treatment equipment, compressed air facilities, and inventory accumulating systems.

6. The Property Agreement provided for a purchase price of $5,000,000 for the Gainesville Plant and equipment located in the plant.

7. At the time of entering the Property Agreement, Defendant paid and Plaintiff received an earnest money payment of $1,000,000.

8. The parties subsequently amended the Property Agreement on October 31, 2008, through entering into the Agreement to Resolve Actual Working Capital and to Amend Share Purchase and Sale Agreement and Other Related Agreements (the "Amendment Agreement") to add one Stryko Furnace to the Property Agreement and to increase the purchase price by $150,000.00 to $5,150,000.00.

9. The balance of the purchase price, $4,150,000, was to be paid at closing.

10. The Property Agreement was scheduled to close on January 30, 2009.

11. Plaintiff was prepared to close the Property Agreement and complied with all of its obligations under that agreement.

12. Defendant failed and refused to close the Property Agreement and thereby breached the agreement.

13. The Property Agreement provides that it shall be governed by, and construed in accordance with, the laws of the State of Georgia.

14. The Property Agreement also included a Restrictive Operating Agreement as Exhibit H, under which Defendant agreed to a restriction on manufacturing lines at the Gainesville Plant. Specifically, Defendant agreed that it would "permanently and in perpetuity cease the production of cast aluminum

wheels at the [Gainesville Plant] for use by original equipment manufacturers ("OEMs")." The Restrictive Operating Agreement allowed Defendant to manufacture cast aluminum wheels at the Gainesville Plant "solely for sale to aftermarket customers," and to manufacture other types of wheels for sale to OEM and aftermarket customers, but Defendant agreed that it would not manufacture cast aluminum wheels at the Gainesville Plant for OEM customers.

15. In addition, the Property Agreement contains an attorney's fees clause providing that "If either party defaults in its obligations hereunder, the defaulting party shall pay the reasonable attorney's fees incurred by the other party in order to enforce its rights hereunder."

16. After Defendant refused to close the Property Agreement, Plaintiff filed this action on February 9, 2009 asserting causes of action for Specific Performance and Breach of Contract.

17. On May 23, 2012, Plaintiff filed a Motion for Summary Judgment [103] asking the Court to enter judgment as a matter of law on its claim that Defendant breached the Property Agreement. The Court granted Plaintiff's Motion for Summary Judgment by Order [129] dated October 12, 2012.

18. In an effort to mitigate its damages, Plaintiff entered into an Exclusive Sales Agency Contract on September 28, 2010 in which it listed the property

located at 1215 Palmour Drive for sale through its sales agent, The Simpson Company of Georgia, Inc., and set an asking price of $3,995,000.00.

19.   Plaintiff received and accepted three offers to purchase the property; the first two offers were withdrawn by the prospective purchasers, and only the third offer went to closing.

20.   Plaintiff mitigated its damages by selling the property to a buyer for a gross purchase price of $1,850,000.00 on June 4, 2012.

21.   Plaintiff left some of the equipment included in the Property Agreement in the Gainesville Plant at the time of its sale.  In particular, the waste water treatment and the compressed air facilities were left with the Gainesville Plant as part of the sale.

22.   Plaintiff removed the other equipment from the Gainesville Plant. Specifically, the solution heat treatment, with the exception of certain FANUC Robots, and the inventory accumulating systems were removed from the Gainesville Plant and transferred to Hayes Lemmerz Chihuahua, Mexico facility, and Plaintiff hired the manufacturer of the Eisenmann paint line to disassemble and move the paint line to a storage facility in North Georgia where it is currently held.

23.   Plaintiff sold the Gainesville Plant and the compressors and water treatment equipment on June 4, 2012 for a gross sale price of $1,850,000 and a net

sale price of $1,700,992.

24. Plaintiff sold a large propane tank for $15,500, and retained earnest money from one of the two prospective purchasers of the Gainesville Plant who did not close in the amount of $80,000.

24. The fair market value of the equipment retained by Plaintiff is $354,250.

25. Plaintiff retained Defendant's earnest money payment in the amount of $1,000,000.

26. Plaintiff was damaged in the amount of $1,999,258 as the difference between the parties' contract price and the fair market value of the real and personal property at the time of the breach.

27. Plaintiff was damaged in the amount of $1,632,980 as incidental damages caused by Defendant's breach of the Property Agreement.

28. Plaintiff was damaged in the amount of $939,788 through September 2012, plus an additional amount through Judgment, by incurring reasonable attorney's fees to enforce its rights against Defendant under the Property Agreement.

## II. Conclusions of Law.

1. The Property Agreement is a valid contract enforceable under Georgia

6

law.  O.C.G.A. § 13-3-1.

2. The elements of a breach of contract are a valid contract, the breach, and the resultant damages to the party who has a right to complain that the contract was broken, *Budget Rent-A-Car of Atlanta v. Webb*, 469 S.E.2d 712, 713 (Ga. App. 1996).  Plaintiff has shown that it is entitled to relief for Defendant's breach of the Property Agreement.

3. Damages are given as compensation for the injury sustained as a result of the breach of a contract.  O.C.G.A. § 13-6-1.

4. Damages, as that term is ordinarily used, means simply a measure of injury.  *Macon-Bibb County Water and Sewerage Auth. V. Tuttle/White Constructors, Inc.*, 530 F. Supp. 1048, 1054 (M.D. Ga. 1981).  The purpose of damages is to place the injured person in the same position, so far as money can do it, as he would have been in had there been no injury or breach of duty.  *Meltzer v. Roof Coatings, Inc.*, 536 F.2d 663 (5th Cir. 1976); *Freeport Sulphur Co. v. S/S. Hermosa*, 526 F.2d 300 (5th Cir. 1976); *Pletz v. Christian Herald Ass'n, Inc.*, 486 F.2d 94 (5th Cir. 1973).

5. The measure of damages when a breach of contract is involved is "the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed." *New Amsterdam*

*Casualty Co. v. Mitchell*, 325 F.2d 474 (5th Cir. 1963) (quoting *Georgia Power and Light Co. v. Fruit Growers Exp. Co.*, 190 S.E. 669, 672 (Ga. Ct. App. 1937)).

6. "[T]he measure of damages for breach of a contract to sell land is the difference between the contract price and the fair market value of the land at the time of the breach." *Quigley v. Jones*, 334 S.E.2d 664, 665 (Ga. 1985).

7. In connection with the breach of a contract for the sale of goods, "[t]he seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this article (Code Section 11-2-710), but less expenses saved in consequence of the buyer's breach." O.C.G.A. §§ 11-2-706; 11-2-723.

8. "Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses, or commissions incurred in stopping delivery, in the transportation, care, and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." O.C.G.A. § 11-2-710.

9. "Incidental damages include all commercially reasonable expenditures. The test of commercial reasonableness is a practical one, requiring

primarily honesty and good faith in attempting to minimize damages. What is commercially reasonable is to be determined from all the facts and circumstances of each case, and must be judged in the light of one viewing the situation at the time the problem was presented." *Beckman Cotton Co. v. First Nat'l Bank of Atlanta*, 666 F.2d 181 (5th Cir. 1982)(internal citations and quotations omitted).

10. Remedies for the breach of contracts for the sale of goods "should be liberally administered so that the aggrieved party may be put in as good a position as if the other party had fully performed." *Latex Equip. Sales & Svc., Inc. v. Apache Mills, Inc.*, 484 S.E.2d 274, 276 (Ga. Ct. App. 1997).

11. "[I]n the absence of a controlling statute, a party's entitlement to attorneys fees under a contractual provision is determined by the usual rules of contract interpretation." *Eagle Jets, LLC v. Atlanta Jet, Inc.*, 740 S.E.2d 439, 451 (Ga. Ct. App. 2013). "The construction of a contract is a question of law for the court." O.C.G.A. § 13-2-1.

12. Plaintiff is entitled to recover damages of $1,999,258 as measured by the difference between the contract price and the fair market value of the land and the goods. O.C.G.A. § 13-6-1; *Quigley v. Jones*, 334 S.E.2d 664, 665 (Ga. 1985); O.C.G.A. § 11-2-706.

13. Plaintiff is entitled to recover damages of $1,632,980 as incidental

damages caused by Defendant's breach.  O.C.G.A. § 11-2-710; *Latex Equip. Sales & Svc., Inc. v. Apache Mills, Inc.*, 484 S.E.2d 274, 276 (Ga. Ct. App. 1997).

14.  Plaintiff is entitled to recover damages of $939,788 as reasonable attorney's fees incurred by Plaintiff through September 2012 to enforce its rights under the Property Agreement, plus an additional amount of money as its reasonable attorneys fees from September 2012 through the date of Judgment. *Eagle Jets, LLC v. Atlanta Jet, Inc.*, 740 S.E.2d 439, 451 (Ga. Ct. App. 2013); O.C.G.A. § 13-2-1.

15.  Plaintiff is entitled to recover interest from January 30, 2009 to the date of Judgment.  O.C.G.A. § 13-6-13.

Respectfully submitted this 17th day of May, 2013.

/s/ David P. Thatcher
David P. Thatcher
Georgia Bar No. 703299
Attorneys for Plaintiff
Hayes Lemmerz International-Georgia, Inc.
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART
One Ninety One Peachtree Tower
191 Peachtree Street, N.E., Suite 4800
Atlanta, Georgia  30303
Telephone: (404) 881-1300
david.thatcher@ogletreedeakins.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| HAYES LEMMERZ INTERNATIONAL-GEORGIA, INC., ) ) ) | |
| Plaintiff, ) ) | CIVIL ACTION NO. 2:09-CV-00021-RWS |
| v. ) ) | |
| PUNCH PROPERTY INTERNATIONAL NV, ) ) ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

I certify that on May 17, 2013, I electronically filed a copy of PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorney of record:

    George Koenig
    Koenig Law Group, P.C.
    Peachtree 25th, Suite 599
    1718 Peachtree Street, N.W.
    Atlanta, Georgia  30309

        /s/  David P. Thatcher
        David P. Thatcher
        Georgia Bar No. 703299
        Attorneys for Plaintiff