IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| HAYES LEMMERZ INTERNATIONAL-GEORGIA, INC., | : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 2:09-CV-00021-RWS |
| v. | : : | |
| PUNCH PROPERTY INTERNATIONAL NV, | : : | |
| Defendant. | | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This case came before the Court for a bench trial on May 28, 2013

through May 30, 2013.  Having heard the evidence and the arguments, the

Court enters the following findings of fact and conclusions of law.

FINDINGS OF FACT

1.      Plaintiff Hayes Lemmerz International-Georgia, Inc. ("Plaintiff") is

a part of the Hayes Lemmerz companies, the largest global original equipment

automotive wheel manufacturer.

2.      Plaintiff owned and operated a cast aluminum automotive wheel

manufacturing facility at 1215 Palmour Drive, Gainesville, Georgia (the

"Gainesville Plant").

3.     On June 13, 2008, Plaintiff entered into an Agreement of Purchase and Sale with Defendant Punch Property International NV ("Defendant") (the "Property Agreement") for the sale of the Gainesville Plant and equipment located in the plant.

4.     The Property Agreement described the real property to be sold as approximately 18.365 acres of land located at 1215 Palmour Drive, and the building, parking area, and related facilities situated on the land.  The metes and bounds description of the land was set forth in Exhibit A to the Property Agreement.

5.     The Property Agreement described the personal property to be sold as trade fixtures and equipment including the paint line, the Moco heat treatment installation, the conveyors and the pre-load station that feed the paint line.

6.     The personal property was more specifically described in Exhibit B to the Property Agreement, and includes an Eisenmann paint line, Moco heat treatment equipment, Stryko furnace, waste water treatment equipment, compressed air facilities, and inventory accumulating systems.

7.     The Property Agreement provided for a purchase price of $5,000,000

2

for the Gainesville Plant and equipment located in the plant.

8.      At the time of entering the Property Agreement, Defendant paid and Plaintiff received an earnest money payment of $1,000,000.

9.      The parties subsequently amended the Property Agreement on October 31, 2008, through entering into the Agreement to Resolve Actual Working Capital and to Amend Share Purchase and Sale Agreement and Other Related Agreements (the "Amendment Agreement") to add one Stryko Furnace to the Property Agreement and to increase the purchase price by $150,000 to $5,150,000.

10.     The balance of the purchase price, $4,150,000, was to be paid at closing.

11.     The Property Agreement was scheduled to close on January 30, 2009.

12.     Plaintiff was prepared to close the Property Agreement and complied with all of its obligations under that agreement.

13.     Defendant failed and refused to close the Property Agreement and thereby breached the agreement.

14.     The Property Agreement provides that it shall be governed by, and construed in accordance with, the laws of the State of Georgia.

15.     The Property Agreement also included a Restrictive Operating

Agreement as Exhibit H, under which Defendant agreed to a restriction on manufacturing lines at the Gainesville Plant. Specifically, Defendant agreed that it would "permanently and in perpetuity cease the production of cast aluminum wheels at the [Gainesville Plant] for use by original equipment manufacturers ('OEMs')." The Restrictive Operating Agreement allowed Defendant to manufacture cast aluminum wheels at the Gainesville Plant "solely for sale to aftermarket customers," and to manufacture other types of wheels for sale to OEM and aftermarket customers, but Defendant agreed that it would not manufacture cast aluminum wheels at the Gainesville Plant for OEM manufacturers.

16.    In addition, the Property Agreement contains an attorney's fee clause providing that "[i]f either party defaults in its obligations hereunder, the defaulting party shall pay the reasonable attorney's fees incurred by the other party in order to enforce its rights hereunder."

17.    After Defendant refused to close the Property Agreement, Plaintiff filed this action on February 9, 2009 asserting causes of action for Specific Performance and Breach of Contract.

18.    On May 23, 2012, Plaintiff filed a Motion for Summary Judgment (Dkt. [103]) asking the Court to enter judgment as a matter of law on its claim that

4

Defendant breached the Property Agreement.  The Court granted Plaintiff's Motion for Summary Judgment by Order (Dkt. [129]) dated October 12, 2012.

19.   In an effort to mitigate its damages, Plaintiff entered into an Exclusive Sales Agency Contract on September 28, 2010 in which it listed the property located at 1215 Palmour Drive for sale through its sales agent, The Simpson Company of Georgia, Inc., and set an asking price of $3,995,000.

20.   Plaintiff received and accepted three offers to purchase the property; the first two offers were withdrawn by the prospective purchasers, and only the third offer went to closing.

21.   Plaintiff mitigated its damages by selling the property to a buyer for a gross purchase price of $1,850,000 on June 4, 2012.

22.   Plaintiff left some of the equipment included in the Property Agreement in the Gainesville Plant at the time of its sale.  In particular, the waste water treatment and compressed air facilities were left with the Gainesville Plant as part of the sale.

23.   Plaintiff removed the other equipment from the Gainesville Plant. Specifically, the solution heat treatment, with the exception of certain FANUC Robots, and the inventory accumulating systems were removed from the

5

Gainesville Plant and transferred to Hayes Lemmerz Chihuahua, Mexico facility, and Plaintiff hired the manufacturer of the Eisenmann paint line to disassemble and move the paint line to a storage facility in North Georgia where it is currently held.

24.     Plaintiff sold the Gainesville Plaint and the compressors and water treatment equipment on June 4, 2012 for a gross sale price of $1,850,000 and a net sale price of $1,700,992.

25.     Plaintiff sold a large propane tank for $15,500 and retained earnest money from one of the two prospective purchasers of the Gainesville Plant who did not close in the amount of $80,000.

26.     Plaintiff retained Defendant's earnest money payment in the amount of $1,000,000.

<u>CONCLUSIONS OF LAW</u>

1.     The Property Agreement is a valid contract enforceable under Georgia law.  O.C.G.A. § 13-3-1.

2.     The elements of breach of contract are a valid contract, the breach, and the resultant damages to the party who has a right to complain that the contract was broken.  <u>Budget Rent-A-Car of Atlanta v. Webb</u>, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996).  Plaintiff has shown that it is entitled to relief for Defendant's breach

6

of the Property Agreement.

3.     "Where a party sues for damages, he has the burden of proof of showing the amount of loss in a manner in which the jury or the trial judge in nonjury cases can calculate the amount of the loss with a reasonable degree of certainty."  Big Builders v. Evans, 191 S.E.2d 290, 291 (Ga. Ct. App. 1972).

4.     Damages are given as compensation for the injury sustained as a result of the breach of contract.  O.C.G.A. § 13-6-1.

5.     "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach."  O.C.G.A. § 13-6-2.

6.     "[A]s to breach of a contract to sell real property, a special damage rule applies which provides that 'the measure of damages for breach of a contract to sell land is the difference between the contract price and the fair market value of the land at the time of breach.'"  Roba v. Dotson, 727 S.E.2d 542, 543 (Ga. Ct. App. 2012) (quoting Quigley v. Jones, 334 S.E.2d 664, 665 (Ga. 1985)). "Moreover, under the special rule for breach of a contract to sell land, there can be no recovery of additional damages of the type recoverable under O.C.G.A. §§ 13-

7

6-2 and 13-6-8 'in the absence of a clause in the parties' contract expressly authorizing such recovery.'" Id. (quoting Quigley, 334 S.E.2d at 665). General language in a sales contract that the seller in the event of the buyer's breach may "recover additional damages under this contract" or "for any available remedy at law or in equity" does not expressly authorize recovery of such additional damages. Id. (citing Quigley, 334 S.E.2d at 665 n.1).

7.      In connection with the breach of a contract for the sale of goods, "[t]he seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this article (Code Section 11-2-710), but less expenses saved in consequence of the buyer's breach." O.C.G.A. § 11-2-706; 11-2-723.

8.      Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses, or commissions incurred in stopping delivery, in the transportation, care, and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." O.C.G.A. § 11-2-710.

8

9.     If the Property Agreement is treated strictly as a contract for the sale of real property, as opposed to a contract for the sale of real property <u>and</u> the sale of goods (i.e., if the parties intended the equipment to remain permanently in its place and pass to Defendant with the real property),[1] it is subject to the special damage rule stated in paragraph 6, <u>supra</u>.  Under this rule, the measure of damages to which Plaintiff is entitled is the difference between the contract price and the fair market value of the real property at the time of breach.

10.     Plaintiff has failed to prove the amount of damages to which it is entitled under the special damage rule for contracts for the sale of real property.  Specifically, Plaintiff has failed to prove by a preponderance of the evidence the fair market value of the real property at the time of breach.  The only evidence Plaintiff presented of fair market value of the real property was $1,850,000—the gross price for which Plaintiff sold the Gainesville Plant and the compressors and water treatment equipment <u>on June 4, 2012</u>.  This value, however, does not represent the fair market value of the real property <u>on the date of breach, January 30, 2009</u>.

---

[1] Under O.C.G.A. § 44-1-6, "[a]nything which is intended to remain permanently in its place even if it is not actually attached to the land is a fixture which constitutes a part of the realty and passes with it."

9

11.     If the Property Agreement is treated as a contract for the sale of real property <u>and</u> the sale of goods,  it is governed by the special damage rule for real property <u>and</u> the rule governing breach of contract for the sale of goods stated in paragraph 7, <u>supra</u>.  As stated in that paragraph, the measure of damages for breach of a contract to sell goods is the difference between the contract price and the resale price plus any incidental damages allowed under O.C.G.A. § 11-2-706.

12.     Plaintiff has failed to prove the damages to which it is entitled if the Property Agreement is treated as a contract for the sale of real property and for the sale of goods.  As explained in paragraph 10, <u>supra</u>, Plaintiff has failed to show the damages to which it is entitled under the special damage rule for contracts for the sale of real property.  Plaintiff has also failed to prove the damages to which it is entitled for breach of an agreement to sell goods:  First, Plaintiff has failed to present any evidence of the contract price of the equipment—i.e., the portion of the contract price that is attributable to the equipment.  Second, Plaintiff has failed to show a resale price of the equipment, as the equipment has not been resold.  Moreover, Plaintiff has failed to prove by a preponderance of the evidence the fair market value of the equipment, leaving the Court without any means of calculating damages.

13.     Plaintiff is not entitled to recover incidental damages.  If the Property Agreement is treated strictly as a contract for the sale of real property, incidental damages are not recoverable under the special damage rule.  If the Property Agreement is treated as a contract for the sale of real property and for the sale of goods, incidental damages are not recoverable because Plaintiff has failed to prove by a preponderance of the evidence that the incidental damages claimed were incurred "in the transportation, care, and custody of <u>goods</u> after the buyer's breach," O.C.G.A. § 11-2-710 (emphasis added), as opposed to in the care and custody of the real property.

14.     However, "in every breach of contract the injured party has a right to damages, and if there has been no such actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." <u>Brock v. King</u>, 629 S.E.2d 829, 835 (Ga. Ct. App. 2006) (internal quotes and citation omitted).  "Nominal damages are generally defined as a trivial sum awarded where a breach of duty or an infraction of the plaintiff's right is shown, but no serious loss is proved." <u>Id.</u> (internal quotes and citation omitted). "Nominal damages are not given as compensation for the breach of a contract, but simply as vindication of the right of a person who brings an action upon a good

11

cause, but fails to prove that he has sustained any actual damage, and to prevent his being mulcted in the costs after he has established his cause of action." Id. at 836 (emphasis and citation omitted).

15.    Plaintiff is entitled to nominal damages in the sum of $100.00.

16.    "In the absence of a controlling statute, a party's entitlement to attorneys fees under a contractual provision is determined by the usual rules of contract interpretation." Eagle Jets, LLC v. Atlanta Jet, Inc., 740 S.E.2d 439, 451 (Ga. Ct. App. 2013). "The construction of a contract is a question of law for the court." O.C.G.A. § 13-2-1.

17.    "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  The product of this formula is the 'lodestar,' which is the guiding light of our fee-shifting jurisprudence. . . .  Once the court arrives at the lodestar figure, it may be adjusted according to whether the results were excellent, whether the fee was fixed or contingent, and other factors. . . .  The degree of the Plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee." Teare v. Remax of Georgia, Inc., No. 1:05-cv-1236-RWS, 2008 WL 5412347, at

12

*1 (N.D. Ga. Dec. 23, 2008) (internal quotations and citations omitted).

18.    "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rate." Id. (internal quotes and citation omitted).

19.    In determining a reasonable number of compensable hours, the Court considers the twelve factors set out in Johnson v. Ga. Highway Express, 488 F.2d 714, 717-19 & n.11 (5th Cir. 1974)[2]: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Id. (citing Johnson, 488 F.2d at 717-19).

20.    "A reasonable hourly rate is determined by the prevailing market rate

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." <u>Kinnard v. Kelly</u>, No. 1:08-cv-001824-JOF, 2010 WL 761230, at *5 (N.D. Ga. Mar. 2, 2010) (internal quotes and citation omitted).  "The relevant legal community is the area in which the court sits . . . ." <u>Id.</u> at *5 n.10 (internal quotes and citation omitted).

21.    The plaintiff may recover attorneys fees pursuant to a contractual provision even where the plaintiff fails to prove actual damages sustained as a result of the defendant's breach.  <u>Brock</u>, 629 S.E.2d at 836.

22.    The hourly rates sought by Plaintiff's counsel are reasonable.

23.    However, Plaintiff is not entitled to recover fees to the full extent of the hours claimed.  Reductions are warranted based on the hours expended on the motion for summary judgment and in response to Defendant's expert report on attorney's fees, the previous award of attorney's fees as a sanction, and the degree of success by Plaintiff in the case.

24.    Taking into account all of these factors, Plaintiff is awarded attorney's fees in the sum of $525,000.00.

The Clerk shall enter judgment in favor of Plaintiff awarding Plaintiff $100.00 as nominal damages, $525,000.00 as attorney's fees, and costs of this action.

**SO ORDERED**, this  20th  day of June, 2013.


RICHARD W. STORY
United States District Judge

15